UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID JALVING,

    Plaintiff,

v.            Case No:  2:13-cv-396-FtM-29CM

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

_____

## REPORT AND RECOMMENDATION[1]

Before the Court is Plaintiff David Jalving's ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claims for Disability Insurance Benefits and Supplemental Security Income.   For the reasons discussed herein, the Court recommends that the decision of the Commissioner be **REVERSED and REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four.

### I. Issues on Appeal

Plaintiff raises three arguments on appeal, specifically that: (1) the Administrative Law Judge ("ALJ") failed to consider the medical evidence supporting a finding that Plaintiff meets or medically equals Listing 14.09, 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) the ALJ erred in his analysis of the June 23, 2011

---

[1] Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Functional Capacity Evaluation performed by The Rehabilitation Hospital, Lee Memorial Health System; and (3) that testimony from a Vocational Expert ("VE") was required because Plaintiff's limitations preclude the performance of a full range of light work.

## II.     Procedural History

On May 14, 2009, Plaintiff filed applications for a period of disability and disability insurance benefits, alleging a disability onset date of March 25, 2009.   His applications were denied both initially on March 3, 2010 and on June 25, 2010 upon Plaintiff's request for reconsideration.   Plaintiff then requested and received a hearing before ALJ Frederick McGrath on July 28, 2011.   Following the hearing, the ALJ issued an unfavorable decision, finding that Plaintiff is not disabled and denying his claim for benefits.   Tr. 12-25.   Plaintiff requested review by the Appeals Council, which was denied on March 26, 2013.   Tr. 1-5.   Plaintiff timely filed his Complaint in this Court, pursuant to 42 U.S.C. § 405(g), on May 24, 2013 (Doc. 1).   The matter has been fully briefed and is now ripe for review.

## III.    Summary of the ALJ's Decision

The ALJ first determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2015.   Tr. 12, 14.   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 25, 2009, the alleged onset date ("AOD").   Tr. 14.   In making this finding, the ALJ noted that Plaintiff worked as a sales representative for Mattress Giant from October 18, 2010 through December 21, 2010, but was unable to continue due to his impairments.

Tr. 14. The ALJ determined this was an unsuccessful work attempt and not substantial gainful activity. Tr. 14. The ALJ also determined that Plaintiff's receipt of unemployment compensation benefits was not substantial gainful activity. Tr. 14.

At step two, the ALJ determined that Plaintiff "has the following severe impairments: ankylosis spondylitis (back disorder) with chronic pain; and history of asthma (20 CFR 404.1520(c))." Tr. 15. The ALJ also found that Plaintiff's medically determinable mental impairment of depression does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and is therefore nonsevere. Tr. 15. In making this determination, the ALJ considered the record evidence, Plaintiff's testimony and the four broad functional areas set forth in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1), also known as the "paragraph B" criteria. The ALJ noted that Plaintiff has no significant history of treatment for a mental condition and that Plaintiff's depressive symptoms are successfully managed and his depression is "stable" with medication. Tr. 15. The ALJ also discussed Plaintiff's mental status exam conducted by Dr. Kasprzak, who opined that Plaintiff was unlikely to sustain gainful employment due to his chronic pain. Tr. 16. The ALJ explained that he gave this opinion little weight, because it is inconsistent with the record as a whole. Tr. 16.

The ALJ then expressly addressed each of the four broad functional areas. As to the first functional area – activities of daily living – the ALJ noted that both

Plaintiff and his wife reported that Plaintiff is able to take care of his personal needs, except when his pain gets too bad and then he needs help, and that Plaintiff can drive, go out alone, shop, do laundry, perform light household work and help with his children.   Tr. 16.   The ALJ concluded that Plaintiff has mild limitation, but that any limitation is due to his pain and not a mental disorder.   Tr. 16.   As to the second functional area – social functioning – the ALJ noted that Plaintiff reported that he had 60-70 friends and that Plaintiff and his wife both reported that Plaintiff has no problem getting along with friends, family or authority figures.   Tr. 16.   The ALJ concluded that Plaintiff has no limitation in social functioning.   Tr. 16.   As to the third functional area – concentration, persistence or pace – the ALJ found that Plaintiff has mild limitation, but that any limitation appears to be due to Plaintiff's pain symptoms and not a mental impairment.   Tr. 16.   Finally, as to the fourth functional area – episodes of decompensation – the ALJ determined that Plaintiff has had no episodes of decompensation of an extended duration.   Tr. 17.

Notwithstanding the impairments the ALJ found to be severe at step two of the sequential evaluation, at step three the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   Tr. 18.   The ALJ noted that Plaintiff "does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity."   Tr. 18.

At step four, the ALJ found that Plaintiff has the RFC to perform the exertional demands of a wide range of light work, or work which requires maximum lifting of 20 pounds and frequent lifting of up to 10 pounds.   Tr. 18.   The ALJ determined that Plaintiff cannot lift and carry more than 20 pounds or more than 10 pounds on a regular basis, but can sit for 6 hours and stand and walk for 6 hours in an 8-hour workday.   Tr. 18.   As part of this RFC, the ALJ also determined that Plaintiff can never climb ladders/ropes/scaffolds, work in high exposed places or around hazardous conditions, but can frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl.   Tr. 18.   The ALJ also found that Plaintiff should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation and other irritants. Tr. 18.   The ALJ noted that Plaintiff is capable of understanding, remembering and carrying out simple one or two-step instructions and performing sustained repetitive tasks on a continuous basis.   Tr. 18.

In determining Plaintiff's RFC, the ALJ considered his treatment records and other evidence and concluded:

> After a thorough review of the entire record, the undersigned finds that there is no documentation that substantiates any assertion that the claimant has any mental or physical problems that cause him to be unable to perform any form of substantial work activity.   Although the claimant may have some mild restrictions, the totality of evidence in the record does not persuade the undersigned that he is precluded from all types and degrees of work activities.   The undersigned cannot find sufficient evidence to preclude the claimant's ability to perform a wide range of light work-related activities.

Tr. 22.

The ALJ found that evidence received after the reconsideration determination did not provide any new or material information that would alter any findings about Plaintiff's RFC.   Tr. 24.   The ALJ concluded that Plaintiff is limited to light, unskilled work and therefore unable to perform any of his PRW, because Plaintiff's PRW as a lawn care specialist and sales manager required performance of physical and skill demands not permitted by Plaintiff's RFC.   Tr. 24.

The ALJ proceeded to discuss Plaintiff's age as of the AOD, 38, and that Plaintiff has a high school education and is able to communicate in English.   Tr. 24. The ALJ determined that the Medical-Vocational rules support a finding that Plaintiff is not disabled.   Tr. 24 (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).   The ALJ found that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.   Tr. 24.   The ALJ also noted that, although Plaintiff is not capable of performing the full range of light work, his "additional limitations have little or no effect on the occupational base of unskilled light work." Tr. 25.   He therefore concluded that Plaintiff is not disabled.   Tr. 25.

## IV.   Social Security Act Eligibility and Standard of Review

To be entitled to benefits, a claimant must be disabled.   A "disability" reflects the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.   A "physical

or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques, and the impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity which exists in the national economy.   42 U.S.C. §§ 423(d)(2) and (3); 20 C.F.R. §§ 404.1508-404.1509.

The SSA promulgated regulations detailing a sequential evaluation process to be used in determining whether a claimant is disabled.   20 C.F.R. §§ 404.1520, 416.920.   The evaluation process requires the ALJ to determine, in sequence, whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment; whether the severe impairment meets or equals the medical criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his PRW.

If the ALJ determines the claimant cannot perform his PRW, the final step of the evaluation process requires the ALJ to determine if the claimant can perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a).   The claimant bears the burden of persuasion through step four, and at step five the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   A claimant is entitled to benefits only if the ALJ determines that he is unable to perform his past work or any other work.   *Id.* at 141-42.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).   A determination by the Commissioner that a claimant is not disabled must be upheld if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla; the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision, *Foote,* 67 F.3d at 1560, and must affirm the decision of the Commissioner if the decision is supported by substantial evidence even if the reviewer would have reached a contrary result or finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   Credibility determinations fall within the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record, nor will it reweigh the evidence.   *Foote,* 67 F.3d at 1560, 1562.

V.      **Relevant Evidence**

a. *Plaintiff's testimony and reports*

Plaintiff alleges that he is unable to work because of his ankylosing spondylitis. Tr. 61.   Plaintiff testified that his condition limits his range of motion and causes him to experience pain in his neck, back, shoulders, hips and ankles, which affects his ability to bend over, squat, pick up items from the floor and get down on his hands and knees.   Tr. 62.   Plaintiff also suffers from asthma, for which he uses a daily inhaler.   Tr. 62-64.

Plaintiff testified that he experiences depression and anxiety and suffers from extreme fatigue.   Tr. 64.   He reported that anxiety may be a side effect of his asthma medication and that his medication also causes dizziness and sleepiness.   Tr. 64-65. Plaintiff testified that the medication reduces his pain to the point where he can "semi-function during the day," but he is afraid to drive and avoids driving if possible due to the dizziness caused by his medication.   Tr. 65.   Plaintiff also testified that he has a hard time focusing on household chores, so even when he starts a task he will have his children finish for him.   Tr. 65-66.

Plaintiff estimated that he can stand comfortably for only about seven to ten minutes at a time.   Tr. 66.   Plaintiff also reported having difficulty sitting, because he cannot get comfortable without switching positions and often has to lie down.   Tr. 66.   Plaintiff testified that he is not able to lift or carry anything heavy, but can sometimes bend, squat and kneel.   Tr. 67.   Plaintiff testified that he takes naps most of the day, every day, and spends the majority of the day sitting down, but lies

down when sitting becomes uncomfortable.   Tr. 67-68.   Plaintiff also reported having back surgery after falling and testified that he falls three or four times per month, but is more stable with the use of a cane.   Tr. 61.   Plaintiff reported taking medications for his asthma, anxiety and ankylosis spondylitis, but reported no side effects from those medications.   Tr. 138.

In a Supplemental Pain Questionnaire dated October 6, 2009, Plaintiff reported experiencing pain in his back, hips, ankles, knees, shoulders, hands, wrists and elbows.   Tr. 140.   Plaintiff reported that any physical activity causes stiffness and pain and that sitting too long in one position is uncomfortable, but states that his pain is relieved by lying down or being in a pool and that medication reduces his pain, but also causes side effects such as headaches, upset stomach and sleepiness.   Tr. 141-42.   He reported no therapy other than medication.   Tr. 142.   Plaintiff stated that pain and stiffness specifically affect his abilities to perform lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentration, understanding and using his hands.   Tr. 149.

Plaintiff reported that his wife does all the cooking and preparation, housecleaning, laundry and child care, and that his conditions make it difficult to perform personal care activities, shop without sitting down, drive and sleep.   Tr. 142.   Plaintiff also reported that that he is able to go outside 3-4 times per day, tries to mow the lawn every other week, can pay bills, count change, handle a savings account and use a checkbook/money orders and reports having friends over at his house, reading, using the computer to do graphic design, talking on the phone and watching

television.   Tr. 142, 147-49.   He described his daily activities as stretching, taking medication and relaxing most of the day, picking up the children from school with his wife and trying to help with their homework, eating dinner and watching television, and also reported attending church on Sundays.   Tr. 144,[2] 148.   Plaintiff reported that he can follow spoken and written instructions easily, is able to get along with authority figures and has never been fired from a job, but states he is depressed because he cannot do the things he used to do when he was very active, such as sports, bike riding and running.   Tr. 149-51.

Plaintiff completed an undated Disability Report – Appeal in which he reported worsening of his back pain due to an auto accident on March 3, 2010.   Tr. 191. Plaintiff reported that he no longer drives or exercises, has become more withdrawn, has a short temper and has no motivation due to his pain.   Tr. 196.   He completed another undated Disability Report – Appeal in which he reported increased pain and stiffness in his joints and back, more limited flexibility in bending and increased depression and headaches.   Tr. 204, 208.   Plaintiff also reported that he began physical therapy treatment for his back in April 2010, including massage therapy and core strengthening.   Tr. 205.

### b.  Third Party Non-Medical Evidence

Plaintiff's wife, Leah Jalving, described Plaintiff's daily activities as usually sitting or lying down and reported that she and Plaintiff try to walk around the block

---

[2] There are two Function Report – Adult forms dated October 6, 2009 included in the record.   They appear to be identical.   Tr. 144-51; Tr. 152-59.

each morning and they drop off and pick up their children from school.   Tr. 161.   She reported that Plaintiff's conditions affect his sleep patterns, but that he has no problems with personal care and does not need reminders to take care of his personal needs or grooming or to take medicine.   Tr. 162-63.   Plaintiff's wife also reported that he is able to fold clothes, mow the lawn, go outside every day, drive and ride in a car, go out alone, shop in stores and by computer, pay bills, count change, handle a savings account and use a checkbook or money orders.   Tr. 163-64.   She reported that Plaintiff is able to watch television, talk on the phone and has friends come over to his house at least once per week.   Tr. 165.   She stated that Plaintiff's conditions affect lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks and using his hands, and that Plaintiff is in pain every day.   Tr. 166.

<em>c.  Medical Evidence</em>

Plaintiff submitted a multitude of medical records in support of his claim.   A brief recitation of the relevant evidence follows.

Plaintiff's records from Orthopedic Specialists of Southwest Florida dated September 28, 2007 note mild disc bulging at Plaintiff's lower lumbar levels with a shallow protrusion at L5-S1 and mild foraminal narrowing.   Tr. 292.   Dr. Augusthy also noted possible spondylosis.   Tr. 292.   In records from Digestive Health Physicians dated November 10, 2009, James W. Penual, Jr., M.D., noted that Plaintiff's "arthritis symptoms have markedly worsened," that his "back pain and other symptoms related to the ankylosing spondylitis have worsened" and that

Plaintiff "clearly needs to be on therapy for this disease in order to be able to function."   Tr. 235.

Plaintiff had a consultation with Dr. Juan Bustillo, M.D., on May 19, 2009 during which he reported experiencing progressive arthralgias and back pain.   Tr. 252.   Plaintiff reported that his back pain began in his late teens and worsened following a car accident, but Dr. Bustillo noted that Plaintiff's "back pain seems to be inflammatory, since it gets worse with rest."   Tr. 252.   Plaintiff also reported 2-3 hours of morning stiffness and associated fatigue.   Tr. 252.   Plaintiff reported back and joint pain, but no myalgias, and that he was not depressed, nervous or anxious and does not have insomnia.   Tr. 252.   Plaintiff's musculoskeletal exam revealed no edema and no tenderness or swelling in his shoulders, but he exhibited tenderness in his wrists, hands and feet, a decreased ROM and tenderness in his lumbar back, and had a positive Schober's test.   Tr. 253.

Dr. Bustillo's progress note dated June 10, 2009 states that Plaintiff reported that he was "very active" two days before the visit, but the next day he was unable to get out of bed.   Tr. 250.   Plaintiff reported neck, back and joint pain and exhibited tenderness during his musculoskeletal exam, but no edema.   Tr. 250.   A progress note dated July 29, 2009 states that Plaintiff's musculoskeletal exam was positive for arthralgias, but negative for myalgias, back pain, joint swelling and gait problems.   Tr. 249.   Plaintiff's physical exam revealed tenderness in his elbows, hips and lumbar back.   Tr. 249.   A progress note dated October 1, 2009 states that Plaintiff had symptoms of fatigue.   Tr. 248.   A physical exam revealed that Plaintiff was

oriented, well-developed and nourished and he had normal cardiovascular rate, regular rhythm and normal heart sounds, but his musculoskeletal exam revealed tenderness in his lumbar back with no edema.   Tr. 248.

Plaintiff saw Bruce J. Lipschutz, D.O., on September 15, 2009 for his pain.   Tr. 255.   Dr. Lipschutz noted "[p]ositive chronic lumbar pain for at least 3-4 days, although this has been present over many months to perhaps years."   Tr. 255.   Dr. Lipschutz performed a physical examination, after which he noted Plaintiff's extremities had "[e]xcellent range of motion."   Tr. 255.   Dr. Lipschutz's impressions were ankylosing spondylitis, asthma, depression, rhinitis, myalgias and arthralgias. Tr. 255.   Records from a March 11, 2009 visit to Dr. Lipschutz note similar information.   Tr. 257.

Records from January 28, 2009 reveal ongoing treatment for Plaintiff's asthma, depression and chronic lumbar pain.   Tr. 258.   Plaintiff reported elbow, shoulder and bilateral wrist pain with morning stiffness.   Tr. 258.   Dr. Lipschutz conducted a physical exam that revealed that Plaintiff had excellent range of motion in his extremities, and Dr. Lipschutz's impressions were that Plaintiff had joint pain of unclear etiology, asthma, depression and fatigue.   Tr. 258-59.   Treatment records from July 28, 2008 reveal similar complaints of back pain and physical exam results, in addition to moderate tenderness throughout Plaintiff's lateral flank to costal region.   Tr. 260.   Plaintiff also saw Dr. Lipschutz on October 1, 2007 following an asthmatic episode and on September 28, 2007 for treatment of bronchitis with

underlying asthma.   Tr. 261-63.   The records from Plaintiff's September 28, 2007 and October 2, 2007 visits also note a history of chronic lumbar pain.   Tr. 263, 377.

During a June 15, 2010 follow-up visit, Dr. Augusthy noted:   "I do anticipate, given some more time, [Plaintiff's] pain will continue to subside."   Tr. 344.   Records dated October 5, 2010 state that Plaintiff "has been dealing with chronic pain for several years" and that Dr. Augusthy has "never seen him pain-free dating back to when [he] was first treating him in 2007."   Tr. 339.   Dr. Augusthy noted that Plaintiff "would highly benefit from better acceptance of his underlying pathology and ongoing pain syndrome" and that psychiatric support would be ideal.   Tr. 339.   He further stated that he did not believe living "pain-free is realistic" and that Plaintiff "needs to be very realistic about his activity level.   The more he can come to a better acceptance and understanding the better he will likely do in the long run."   Tr. 339.

Dr. Augusthy's records from October 28, 2010 state that Plaintiff's "pathology is very mild but may explain his ongoing pain."   Tr. 331.   Records signed by Dr. Augusthy dated November 29, 2010 and December 29, 2010 state:   "Overall pain is out of proportion to his identifiable pathology."   Tr. 325, 327.   Dr. Augusthy's notes following Plaintiff's November 29, 2010 visit further state:

> I am not quite sure what to do for the patient.   Just a month ago, his pain was at a 4 and now it is at an 8.   Not much has changed other than initiating a new job.   He does request some restrictions for work and this is reasonable, primarily with lifting, pushing and pulling which he feels are likely to be the most aggravating activities . . . .   He continues to relate having quite dramatic pain but presents reasonably comfortably and of course I do not have a very strong explanation for why he has such dramatic pain.

Tr. 327.

Plaintiff also submitted a functional capacity assessment completed by Riverwalk Sports Medicine & Rehab on June 24, 2011.   Tr. 495.   That assessment noted that Plaintiff was able to complete his initial paperwork independently and drove himself, but reported rapid fatigue.   Tr. 495.   The test was performed by physical therapist Kurt Gray, who noted that Plaintiff fatigued rapidly and opined that Plaintiff is not likely to be able to return to any form of work.   Tr. 495.

### d.  State Agency Examinations

Plaintiff was seen on January 8, 2010 by Cheryl J. Kasprzak, Psy.D., for a general clinical evaluation and mental status examination upon request of the Office of  Disability  Determinations.   Tr. 268.   Dr. Kasprzak's  general  observations included that Plaintiff drove himself to the evaluation, but that he had a noticeable gait imbalance and asked for help opening doors.   Tr. 268.   Plaintiff reported that he has never received psychiatric treatment, although he did attend counseling with his church minister four or five times in 2009.   Tr. 209.   He also reported being depressed that he cannot do things he used to do, that he has trouble dealing with the pain and is fatigued, frustrated and angry, but that he and his wife and children were able to drive to Michigan for 8 days in October 2009 and that he enjoys emailing daily, talking on the telephone and going to friends' houses.   Tr. 270.

Dr. Kasprzak conducted a mental status exam and found that Plaintiff's mood was calm, his affect was blunted, he was oriented, had a cooperative attitude and his thought content and processes were normal and his speech was clear, logical and goal-

directed.   Tr. 270.   She estimated Plaintiff's intellectual ability is average and noted he was able to solve a hypothetical math problem, gave an accurate understanding of a proverb and identified similarities between various objects.   Tr. 270.   She also found that Plaintiff's immediate memory is above average, recent memory is average and remote memory is normal.   Tr. 270.   Dr. Kasprzak noted that Plaintiff's attention and concentration were not within normal limits, but that his judgment and insight were adequate.   Tr. 270.   Ultimately, Dr. Kasprzak stated it is "unlikely [he] can sustain gainful employment with his chronic pain."   Tr. 271.

On February 25, 2010, Robert F. Schilling, Ph.D., P.A., completed a psychiatric review technique and mental RFC assessment and concluded that Plaintiff had mild restrictions in activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of an extended duration.   Tr. 286.   He found that evidence did not establish the presence of "paragraph C" criteria.   Tr. 287.

Dr. Schilling's consultant's notes reflect that Plaintiff complained of depression and anxiety related to his physical health problems, but did not report any hospitalizations for mental health purposes.   Tr. 288.   Dr. Schilling noted that Plaintiff "advised his SSA examiner that if it were no[t] for his physical health difficulties, he would not be experiencing any mental health symptoms."   Tr. 288. Dr. Schilling determined that, although Plaintiff may continue to experience pain and occasionally depressive symptoms, Plaintiff "remains functional from a mental perspective" and, "[b]ased on the totality of evidence, he is judged to be capable of

independent functioning and there is no indication of a mental impairment that would meet or equal any listing at this time."   Tr. 288.

Dr. Schilling concluded that Plaintiff had the following RFC, despite his impairments:

> The Claimant's ability to understand and remember complex or detailed instructions is not limited[;] however, they may at times experience mild/moderate difficulties maintaining attention/concentration for extended periods of time.   Basis memory processes are intact.   They can perform work in a stable environment.   They may at times experience mild/moderate difficulties working within a work schedule and at a consistent pace.   They would be able to maintain regular attendance and be punctual. Also, the claimant would not require special supervision in order to sustain a work routine.   There are no restrictions in abilities to socially interact and adapt.   The claimant is able to meet the basic and more complex mental demands of competitive work on a sustained basis despite the limitations resulting from any impairment.

Tr. 274.

Single Decisionmaker Doreatha Coleman ("SDM") determined Plaintiff's exertional limitations as occasionally able to lift and/or carry 20 pounds, frequently able to lift and/or carry 10 pounds, able to stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday and able to sit with normal breaks for about 6 hours in an 8-hour workday.   Tr. 74.   She identified no limitation in Plaintiff's ability to push and/or pull, except to the extent he is limited by his ability to lift and/or carry, and no postural, manipulative, visual, communicative or environmental limitations.   Tr. 75-77.

Coleman found that Plaintiff's symptoms are attributable to a medically determinable impairment, but that the severity or duration of his symptoms is

disproportionate to the expected severity or duration.   Tr. 78.   She further determined that the severity of Plaintiff's symptoms and their alleged effect on his ability to function is not consistent with the total medical and nonmedical evidence. Tr. 78.   She therefore determined that Plaintiff's statements were only partially credible and reduced Plaintiff's RFC to compensate for the impairments that can be medically verified.   Tr. 78.

In a worksheet dated March 3, 2010, Doreatha Coleman determined that Plaintiff's past relevant work of Manager, Sales, as that job is usually performed in the national economy, is precluded due to limitations in Plaintiff's March 1, 2010 mental RFC, because Plaintiff is limited to only semi-skilled work.   Tr. 170-71.   She also determined that vocational rule 202.18 was not met, but serves as a framework for reaching the decision that Plaintiff is not disabled.[3]   Tr. 172.   Ms. Coleman identified possible jobs that Plaintiff could perform as sales attendant, DOT [4]

---

[3] Referring to Medical-Vocational Rule 202.18 ("the grids").   "The grids are a series of matrices which correlate a set of variables – the claimant's residual functional capacity (*i.e.*, the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience.   Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered."   *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985); *see also Parton v. Astrue*, No. 3:07-cv-063-J-TEM, 2008 WL 897094, at *2 n.5 (M.D. Fla. Mar. 31, 2008).

[4] "'DOT' is the short form citation used to refer to the *Dictionary of Occupational Titles.*"   *Hamlin v. Astrue*, No. 3:07-cv-507-J-TEM, 2008 WL 4371326, at *2 n.3 (M.D. Fla. Sept. 19, 2008).   "[T]he DOT groups jobs into 'occupations' based on their similarities and defines the structure and content of all listed occupations."   *Dictionary of Occupational Titles*, "Parts"; *see* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTPARTS.HTM. There are seven basic parts to an occupational definition: the occupational code number; the occupational title; the industry designation; alternate titles (if any); the body of the definition, which includes a lead statement, task element statements, "may" items, glossary words, an unbracketed reference title, and a bracketed title; undefined related titles (if any); and a definition trailer.   *Id.*

The regulations state that the Commissioner may use a variety of resources, including

299.677-010; stocker checker, apparel, DOT 299.667-014; and storage-facility, rental clerk, DOT 295.367-026, all of which require "light" strength.   Tr. 172.

In a review conducted June 14, 2010, Michael Zelenka, Ph.D., determined Plaintiff's affective disorders to be non-severe impairments.   Tr. 302.   Dr. Zelenka evaluated the "paragraph B" criteria and determined that Plaintiff had no restrictions in activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of an extended duration.   Tr. 312.   He also noted that evidence did not establish the presence of "paragraph C" criteria.   Tr. 313.   Dr. Zelenka reviewed Plaintiff's records and determined that Plaintiff developed symptoms of depression as the result of his chronic pain and diagnosis of ankylosing spondylitis; however, he noted that Plaintiff's mental status exam does not find severe symptoms of depression or significant mental limitations.   Tr. 314.   Dr. Zelenka further noted that Plaintiff's activities of daily living reflect only physical limitations.   Tr. 314.

Medical Consultant Robert Steele, M.D., identified Plaintiff's exertional limitations as occasionally able to lift and/or carry up to 20 pounds; frequently able to lift and/or carry up to 10 pounds; able to stand and/or walk and sit about 6 hours

---

the DOT, to determine whether a claimant can perform his PRW, given his RFC.   20 C.F.R. § 404.1560(b)(2).   Additionally, when determining whether work exists in the national economy, the Commissioner will take administrative notice of reliable job information available from various governmental publications, including the DOT, which is published by the Department of Labor.   20 C.F.R. § 404.1566(d)(1).

in an 8-hour workday; and no limitation in Plaintiff's ability to push and/or pull, except restricted in his ability to lift and/or carry.   Tr. 317.   Dr. Steele determined that Plaintiff is able to frequently climb ramp/stairs, balance, stoop, kneel, crouch and crawl, but only occasionally able to climb ladder/rope/scaffolds.   Tr. 318.   Dr. Steele did not report any manipulative, visual or communicative limitations.   Tr. 319-20.   As to Plaintiff's environmental limitations, Dr. Steele determined that Plaintiff should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation and hazards such as machinery and heights.   Tr. 320.   Finally, Dr. Steele determined that Plaintiff's symptoms are attributable to a medically determinable impairment and the severity of his symptoms and their alleged effects are consistent with the total medical and nonmedical evidence.   Tr. 321.

## VI.   Analysis

### a.   Whether the ALJ failed to consider the medical evidence supporting a finding that Plaintiff meets or medically equals Listing 14.09, 20 C.F.R. Part 404, Subpart P, Appendix 1

The ALJ determined that Plaintiff "does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity." Tr. 18.   Plaintiff contends that the ALJ's determination that Plaintiff does not meet or equal a listing is not based upon substantial evidence because the ALJ did not expressly consider Listing 14.09.   Doc. 18 at 24.   Specifically, Plaintiff argues that the record contains sufficient evidence to establish that he meets or equals Listing 14.09D, inflammatory arthritis.[5]   Doc. 18 at 24.   Defendant contends that Plaintiff

---

[5]   Plaintiff's memorandum appears to focus exclusively on Listing 14.09D, inflammatory arthritis.   *See* Doc. 18 at 24-28.   Although Plaintiff does not specifically argue

failed to establish by objective medical evidence that he meets a listing, because he cannot show that he experiences fixation to any degree of the spine or has any of the required constitutional symptoms or marked functional limitation.   Doc. 19 at 5-6.

20 C.F.R. § 404.1520(d) requires finding that a claimant is disabled if his impairment is listed in Subpart P, Appendix 1.   *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988).   The Eleventh Circuit has explained that it is the plaintiff's

---

that he meets Listing 14.09C, he does argue generally that "[t]he ALJ's conclusion is not based on substantial evidence because he failed to consider Listing 14.09."   Doc. 18 at 24. Plaintiff also contends that "[t]he medical evidence of record is replete with documentation of the Plaintiff's diagnosis of ankylosing spondylitis, which is the type of inflammatory arthritis contemplating in Listing 14.09."   *Id.*   Plaintiff's memorandum also repeatedly refers to his diagnosis of ankylosing spondylosis in support of his argument that he meets Listing 14.09.   *See* Doc. 18 at 25-26.   In its memorandum, Defendant argues that Plaintiff fails to establish that he meets either Listing 14.09C or 14.09D.   Doc. 19 at 5-6. Accordingly, the Court will briefly address Listing 14.09C.

To meet Listing 14.09C, ankylosing spondylitis, Plaintiff must establish:

(1) Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45 [degrees] or more of flexion from the vertical position (zero degrees); or

(2) Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30 [degrees] or more of flexion (but less than 45 [degrees]) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

20 C.F.R. Pt. 404, Subpt. P, App. 1, subsection 14.09D.

Upon review, Defendant is correct in its contention that Plaintiff has not submitted any medical records showing that he experiences any degree of fixation of the spine.   *See* Doc. 19 at 6.   Accordingly, Plaintiff has not established that he meets Listing 14.09C. The ALJ's failure to expressly consider this listing is therefore not error.

burden to put forth objective medical evidence in support of his claim that he meets

a particular listing:

> When a claimant contends that he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairments, or, if in the alternative he contends that he has a listed impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency.

*Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

The medical criteria of the listings are more stringent than the statutory standard, because the listings operate as a presumption of disabilities that would prevent a claimant from doing any substantial gainful activity regardless of his age, education or work experience.   *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).   For a claimant to show that his impairment equals a listing, his impairment must meet all of the specified medical criteria; an impairment that meets only some of the criteria does not qualify, regardless of the severity.   *Id.* at 530.   Nor can a claimant qualify for benefits merely by showing that his overall functional limitation is equally as severe as a listed impairment; instead, "he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."   *Id.* at 531.

Part 404, Subpart P, Appendix 1 lists inflammatory arthritis in subsection 14.09D.   To meet Listing 14.09D, Plaintiff must show:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

> (1) Limitation of activities of daily living.

      (2) Limitation in maintaining social functioning.

      (3) Limitation in completing tasks in a timely manner due
          to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, subsection 14.09D.  The term "marked" has a specific meaning within the listings:  "more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, subsection 14.00(I)(5).  A claimant may have marked limitation in one or multiple activities or functions, and a person "need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously interferes with [his] ability to function independently, appropriately, and effectively."  *Id.*

Plaintiff contends that the medical evidence of record is "replete with documentation of the repeated manifestations of inflammatory arthritis contemplated in Listing 14.09(D)."  Doc. 18 at 24.  Plaintiff specifically cites 2009 and 2010 records from Dr. Bustillo, who suggested that Plaintiff's back pain might be inflammatory.  Doc. 18 at 24-25 (citing Tr. 252, 253, 295-96).  Plaintiff also repeatedly notes his diagnosis of ankylosing spondylitis in support of his contention that he meets the listing for inflammatory arthritis.  *See* Doc. 18 at 25-26.

"Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings."  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *see also Davis v. Astrue*, No. 8:11-cv-2398-T-TGW, 2012 WL 6213124, at *4 (M.D. Fla. Dec. 13, 2012) (citing *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 (11th Cir. 2005)).  Upon review of the record, Plaintiff has not shown that he meets or equals listing 14.09D because

Plaintiff has failed to show that he suffers from the requisite constitutional symptoms and a marked limitation.

First, as to Plaintiff's constitutional symptoms, the ALJ noted that Plaintiff complained of fatigue. *See* Tr. 19. In fact, Plaintiff testified at the hearing that he felt fatigued and the record reveals that Plaintiff repeatedly reported to his doctors that he felt fatigued. *See* Tr. 64, 243, 248, 252, 259, 269, 495. Records of Dr. Bustillo dated October 1, 2009 and November 24, 2009 included that his review of Plaintiff's symptoms was positive for fatigue. Tr. 243, 248. Dr. Lipschutz also included an impression that Plaintiff was fatigued. Tr. 259. Dr. Bustillo's June 10, 2009 progress note also states that Plaintiff reported "malaise/fatigue." Tr. 250.

The record therefore arguably contains evidence of at least one of the required constitutional symptoms (severe fatigue), although it is questionable whether Plaintiff can establish that his fatigue is "severe."[6] Plaintiff's medical records also mention a second constitutional symptom (malaise). Even assuming that Plaintiff can successfully show that he suffers from two of the required constitutional symptoms, Plaintiff cannot establish that he meets Listing 14.09D because there is no evidence that he suffers from a marked functional limitation, as discussed more fully below.

As to Plaintiff's functional limitations, the ALJ determined that Plaintiff has only mild limitation in activities of daily living because Plaintiff and his wife reported

---

[6] As used in Listing 14.09D, "[s]evere fatigue means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00(C).

that he is able to take care of his personal needs, drive, go out alone, shop, perform household chores and help with his children.  Tr. 16.   The ALJ also noted that Plaintiff reported having 60-70 friends, and he and his wife both reported that Plaintiff has no problem getting along with family, friends or authority figures.   Tr. 16.   Accordingly, the ALJ determined that Plaintiff had no limitation in the area of social functioning.   Tr. 16.   In the area of concentration, persistence or pace, the ALJ also found that Plaintiff has only mild limitation.   Tr. 16.

The ALJ's determination that Plaintiff has no more than mild limitation in any functional area is supported by substantial evidence in the record.   No medical source or agency examiner has determined that Plaintiff experiences "marked" limitation in any functional area.   On February 25, 2010, Robert F. Schilling, Ph.D., P.A., concluded that Plaintiff had mild restrictions in activities of daily living; no difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace.   Tr. 286.   Michael Zelenka, Ph.D., determined that Plaintiff had no restrictions in activities of daily living; no difficulties in maintaining social functioning; and no difficulties in maintaining concentration, persistence or pace.   Tr. 312.   Thus, even where reviewers determined that Plaintiff has some functional limitations, such limitations were determined to be only mild or moderate.

Moreover, Plaintiff's self-reported daily activities and abilities serve as substantial evidence that he does not suffer from a "marked" functional limitation. "Evidence that a claimant possesses the capacity to care for [himself], such as the

ability to attend church, visit friends or relatives, drive a car, shop, cook, clean, read and watch television, lends support to an ALJ's finding that the claimant does not have a marked limitation on [his] activities of daily living or social functioning." *Driver v. Astrue*, No. 2:08-cv-0001, 2011 WL 2600882, at *4 (M.D. Tenn. June 30, 2011) (finding substantial evidence that plaintiff failed to satisfy the second prong of Listing 14.09D, requiring a showing of a marked limitation).

Accordingly, Plaintiff has not met his burden of establishing that he meets Listing 14.09D, and the ALJ's determination at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 is supported by the record.   Tr. 18.

> b.  *Whether the ALJ erred in his analysis of the June 23, 2011 Functional Capacity Evaluation performed by The Rehabilitation Hospital, Lee Memorial Health System*

Plaintiff argues that the ALJ erred by considering the physical therapist's RFC determination as an "opinion" rather than as a clinical evaluation based upon objective medical testing.   Doc. 18 at 29.   Defendant argues that the ALJ properly evaluated the physical therapist's opinion just like any other medical opinion in the record, despite the fact that a physical therapist is not considered an acceptable medical source.   Doc. 19 at 10.   Specifically, Defendant argues that the determination of a claimant's RFC and whether he is disabled are decisions reserved solely to the Commissioner.   *Id.*

The RFC is the most that a claimant can do despite his limitations.  *See* 20 C.F.R. § 404.1545(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   The claimant's age, education, and work experience are considered in determining his RFC and whether he can return to his past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Under the regulations, the ALJ must weigh any medical opinion based on the treating relationship with the claimant, the length of the treatment relationship, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source and other factors.   *See* 20 C.F.R. § 404.1527(c)(2)-(6).   Opinions of treating sources are usually given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2).

Opinions on some issues, however, such as the claimant's RFC and whether the claimant is disabled or unable to work, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."   20 C.F.R. § 404.1527(d); SSR 96-5p.   Thus, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.   20 C.F.R. § 404.1527(d)(1). Nor is the ALJ required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion as to whether the claimant meets a listed impairment, a claimant's RFC (20 C.F.R. §§ 404.1545 and 404.1546) or the application of vocational factors, because those determinations are the within the sole province of the Commissioner.   20 C.F.R. § 404.1527(d)(3).

Here, the ALJ discussed the June 23, 2011 residual functional capacity assessment completed by physical therapist Kurt Gray of Sports Medicine and Rehab, which identified that Plaintiff could lift and carry an average of 16 pounds frequently and 22 pounds occasionally, but had limited ability to stand, walk, climb, kneel, sit and squat for extended periods of time.   Tr. 22.   The assessment concluded that Plaintiff was not likely to be successful performing any type of work activity, secondary to his inability to sit, stand, walk or lift consistently.   Tr. 22.   The ALJ stated that he gave this opinion little weight because it is inconsistent with the overall objective medical evidence.   Tr. 22.

Moreover, as Defendant correctly argues, physical therapists are not considered acceptable medical sources:

> Pursuant to the regulations, physical therapists are not considered "acceptable medical sources," but rather "other sources." Thus, evidence from physical therapists cannot establish the existence of an impairment and their opinions are not entitled to any special consideration. While the Social Security Administration has acknowledged that opinions from other medical sources are "important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file," an ALJ is not required to accept the opinion of an individual who is not listed as an acceptable source of medical evidence.

*Berry v. Astrue*, No. 5:09-cv-328-Oc-GRJ, 2010 WL 3701392, at *8 (M.D. Fla. Sept. 15, 2010) (footnote omitted). Thus, the ALJ properly considered the physical therapist's RFC report as opinion evidence and determined it was entitled to little weight. Moreover, the determination of a claimant's RFC is reserved exclusively to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-5p. Accordingly, the ALJ did not err in his evaluation of the physical therapist's opinion.

> c. *Whether testimony from a VE was required at step 5 because Plaintiff's limitations preclude the performance of a full range of light work*

The ALJ determined that the Medical-Vocational rules support a finding that Plaintiff is not disabled. Tr. 25. The ALJ found that, considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 24. The ALJ also noted that, although Plaintiff is not capable of performing the full range of light work, his

"additional limitations have little or no effect on the occupational base of unskilled light work."   Tr. 25.

Plaintiff argues that the ALJ's findings are not supported by substantial evidence because the ALJ relied exclusively on the grids, and that testimony of a VE was required because the ALJ found that Plaintiff could perform less than a full range of light work.   Doc. 18 at 31-32.   Defendant responds that the ALJ properly relied upon grid rules §§ 202.21 and 202.22 to determine that Plaintiff is not disabled, because he correctly found that Plaintiff's nonexertional limitations would not significantly erode the occupational base set forth in those rules.[7]   Doc. 19 at 13.

In a disability determination, once a claimant proves that he can no longer perform his past relevant work, "the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."   *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).   One way for the Commissioner to carry this burden is through an application of the Medical-Vocational Guidelines, also known as the "grids."   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

The ALJ noted that when a claimant, such as in this case, cannot perform substantially all of the exertional demands of a given work level and/or has non-exertional limitations, the grids are used as a framework for decision making unless

---

[7] "In the disability programs, a nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction.   Nonexertional impairments may or may not significantly narrow the range of work a person can do."   SSR 83-14, 1983 WL 31254 at *1 (S.S.A. 1983).   Non-exertional limitations affect a claimant's ability to meet the demands of jobs, other than strength demands.   20 C.F.R. § 404.1569a(c).

there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations.   Tr. 25; *see Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996).

"Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985).   "It is only when the claimant can clearly do unlimited types of light work that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."   *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989). Accordingly, "[w]hen a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE."   *Smith*, 272 Fed. Appx. at 799-800 (citing *Jones*, 190 F.3d at 1229).   If non-exertional impairments are minor or are found to be not credible, however, exclusive reliance on the grids is appropriate.   *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 826 (11th Cir. 2010).

In a case similar to the one under review, an ALJ found that a claimant had non-exertional limitations working around unprotected heights or dangerous moving machinery.   The ALJ concluded that the claimant could perform a wide range of light work based on the grids, and therefore it was unnecessary to call a VE.   The Eleventh Circuit reversed, stating:

> Under the ALJ's findings it is evident that claimant was not able to do *unlimited* types of light work, because he was precluded from work around unprotected heights or dangerous moving machinery.   Expert testimony was therefore required to determine whether Marbury's limitations were severe enough to preclude him from performing a wide range of light work.   An ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert.   It was therefore error to rely upon the grids.

*Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (internal citations omitted) (emphasis in original).

Here, it is not clear that Plaintiff can do unlimited types of light work.   The ALJ determined that Plaintiff can never climb ladders/ropes/scaffolds, work in high exposed places or around hazardous conditions and should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation and other irritants. Tr. 18.   The ALJ summarily found that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work."   Tr. 25.   Because the ALJ determined that Plaintiff was capable of less than a full range of light work, the testimony of a VE was required at step 5 to determine the degree, if any, of the reduction of the occupational base available to Plaintiff given his RFC and additional limitations.

## VII.   Conclusion

Accordingly, for the reasons stated in this Report and Recommendation, it is hereby respectfully **RECOMMENDED** that the decision of the Commissioner be

**REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner to consider whether, given Plaintiff's impairments, there are jobs in the national economy that Plaintiff can perform by calling a vocational expert to testify.

      **DONE** and **ENTERED** in Fort Myers, Florida on this 1st day of August, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:

The Honorable John E. Steele
Counsel of record